**Elliott WILLIAMS**

v.

**James A. COLLINS.**

**Civ. No. A–91–CA–509.**

United States District Court,
W.D. Texas,
Austin Division.

Sept. 30, 1992.

completed, before they filed motions for summary judgment raising the issue of qualified immunity.

Elliott Williams, pro se.

S. Michael Bozarth, Tex. Attorney General's Office, Austin, Tex., for respondent.

## ORDER AND FINAL JUDGMENT

NOWLIN, District Judge.

Before the Court is Petitioner Williams' petition for a federal writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. This cause was referred to the United States Magistrate Judge for findings and recommendations pursuant to 28 U.S.C. § 636(b) and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, as amended, effective July 1, 1990.

The Magistrate Judge filed his Report and Recommendation on February 11, 1992. Petitioner Williams filed his objections to the Report and Recommendation on June 8, 1992. Having reviewed the Report and Recommendation and the Petitioner's response and objections thereto, this Court has undertaken a *de novo* review of the entire file and applicable legal principles. This Court declines to adopt the report and recommendation entered by the Magistrate Judge. Instead, this Court enters the following opinion, order, and judgment.

## BACKGROUND

Petitioner Williams was charged by four separate state indictments. Three of the indictments involved first-degree felony offenses of aggravated robbery with a deadly weapon, and the fourth indictment involved a third-degree felony of escape from a penal institution. Each of the four indictments alleged a single prior-felony conviction for the purpose of enhancing the Petitioner's punishment. The Petitioner does not contest the sufficiency of the fourth indictment charging the escape offense. Consequently, the fourth indictment is not at issue before this Court.

On or about April 11, 1988, the trial court accepted Petitioner Williams' pleas of guilty and accepted evidence in support of the pleas. At the same time, Petitioner Williams entered pleas of true to the allegation of a single prior felony conviction.

The Petitioner's convictions were affirmed by the Third Court of Appeals of Texas. The Texas Court of Criminal Appeals denied without written order the petitioner's two state applications for writ of habeas corpus.

Petitioner Williams has filed the instant writ petition, his first in federal court, challenging his confinement for the aggravated robbery offenses alleged in the three separate state indictments. The Petitioner claims that the indictments were fundamentally defective and that his trial counsel provided ineffective assistance. The State does not contest Petitioner's claim that he has exhausted his state remedies. Pursuant to 28 U.S.C. § 2254, the federal courts:

> shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a). Because of ineffective assistance of counsel and three fundamentally defective indictments, the Petitioner asserts that he is in custody in violation of the United States Constitution.

## THE REVIEWABILITY OF THE STATE INDICTMENTS

A difficult issue presented to this Court is whether the highest court of the State of Texas actually considered and ruled on the Petitioner's claims concerning the alleged insufficiency of the indictments. This issue is compounded by the evaluation of whether the state courts ruled on adequate and independent state law grounds or whether a state procedural bar should apply.

One panel of the Fifth Circuit has held that cursory action by the Texas Court of Criminal Appeals will satisfy this consideration requirement and, consequently, will preclude the same claim from review in a federal habeas petition. *See Alexander v. McCotter,* 775 F.2d 595, 599 (5th Cir.1985). If the Texas Court of Criminal Appeals has refused to hear a case over which it has discretionary review on appeal and has also denied a writ of habeas corpus that was partially sought on the alleged insufficiency of the indictment, a Fifth Circuit panel has concluded that the highest state court of Texas has implicitly held that the Texas courts have jurisdiction and that the indictment is sufficient for that purpose. *See Alexander v. McCotter,* 775 F.2d 595, 599 (5th Cir.1985); *see also Morlett v. Lynaugh,* 851 F.2d 1521, 1523 (5th Cir.1988) [1], *cert. denied,* 489 U.S. 1086, 109 S.Ct. 1546, 103 L.Ed.2d 850 (1989). Therefore, the federal habeas corpus court should not consider such claims of insufficiency of the indictment. *See Alexander,* 775 F.2d at 598. The *Alexander* panel did note, however, that the earlier decisions on which it based its ruling all involved cases in which the highest state court had "expressly ruled on the alleged deficiencies of the indictments." *See id.* at 599 n. 1. Also, despite its conclusion on the effect of the consideration by the highest state court, the *Alexander* court nevertheless addressed and decided the claimed insufficiency of the state indictment. *See id.* at 599 (finding that the indictment was sufficient).

A more recent decision of the Fifth Circuit unanimously held that such a cursory dismissal by the highest state court does *not* amount to the requisite consideration of the claims raised in the state petition to preclude a federal court from subsequently addressing those claims. *See Garrett v. McCotter,* 807 F.2d 482, 484 (5th Cir.1987) (emphasis added). In *Garrett,* the Texas Court of Criminal Appeals initially ordered that the habeas application be filed and set for submission. *See id.* Subsequently, the

---

1. However, in *Morlett* the Fifth Circuit did recognize that the Texas Court of Appeals had expressly ruled on such a claim in the petitioner's original direct appeal of his conviction and the Texas court held that the alleged defect was not of a fundamental nature. *See Morlett,* 851 F.2d at 1523.

Texas court issued an order which, after stating that the previous order was improvident, *denied the application and dismissed the cause. See id.*[2] The Fifth Circuit affirmatively held that a mere denial by the state's highest court of the petitioner's application without any explanation is not a ruling on the merits. *Id.* In such a situation, the federal courts must examine the indictments to determine whether they sufficiently vested jurisdiction in the state trial court. *Id.*

Applying the holding of the Fifth Circuit in *Garrett* to the present action, this Court holds that the Texas Court of Criminal Appeals cannot be said to have considered the petitioner's claim relating to the sufficiency of the indictment. The facts and circumstances of the *Garrett* decision appear to be the most similar to those of the present situation.[3] Additionally, the *Garrett* court was fully aware of the earlier decision by the Fifth Circuit in *Alexander.* Thus, the *Garrett* decision more fairly and justly applies to this case than the *Alexander* opinion.[4]

■ The United States Supreme Court has recently clarified the law on state procedural defaults. "When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *See Ylst v. Nunnemaker,* — U.S. ——, ——, 111 S.Ct. 2590, 2593, 115 L.Ed.2d 706 (1991) (citations omitted). In *Ylst,* the Supreme Court explained that:

State procedural bars are not immortal, however; they may expire because of later actions by state courts. If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal court review that might otherwise have been available.

*See id.,* — U.S. at ——, 111 S.Ct. at 2593 (citation omitted). Reiterating the effect of its decision in *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), the *Ylst* Court stated that the *Harris* presumption only applies "after it has been determined that 'the relevant state court decision ... fairly appear[s] to rest primarily on federal law or is interwoven with federal law.'" *See id.,* — U.S. at ——, 111 S.Ct. at 2594 (citation omitted).

In *Ylst,* the Court addressed the difficult question of how federal courts in habeas proceedings are to determine whether an unexplained order rests primarily on federal law, when the order's text does not disclose the reason for the judgment. *See id.* The Court recognized that "sometimes the members of the court issuing an unexplained order will not themselves have agreed upon its rationale, so that the basis of the decision is not merely undiscoverable but nonexistent." *See id.* "Attributing a reason is therefore both difficult and artificial." *Id.* However, the Court did hold that the following *presumption* should apply in federal habeas proceedings:

"[W]here there has been one reasoned state judgment rejecting a federal claim,

---

**2.** The Respondent has argued that the decision in *Garrett* was distinguishable on its facts from *Alexander.* Such an interpretation is not correct. In *Garrett,* the highest state court arguably considered the merits of the petitioner's arguments because the state's highest court actually granted the filing of the petition before it denied the petition without written order. In the present case the highest state court only denied the petition without written order, such cursory dismissal makes any consideration on the merits of the claims in the petition even less likely than the facts of *Garrett.*

**3.** Indeed, the procedural circumstances of the Fifth Circuit's decision in *Alexander* foreshadowed the Supreme Court's holding in *Ylst v. Nunnemaker,* — U.S. ——, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), in which the Court held that

a presumption in favor of an implied consideration of the merits of a habeas argument should be applied "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest on the same ground." *See id.,* — U.S. at ——, 111 S.Ct. at 2594.

**4.** Indeed, even if as the Respondent argues, the unexplained denial order is a ruling on the merits, such a ruling on the merits must be at least interwoven with the federal claims asserted, as well as the state claims. As such, under the *Harris* presumption, this Court must conclude that the federal claims regarding the sufficiency of the indictments are not procedurally barred.

later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground [as the reasoned state judgment]."

*Id.* However, if an earlier opinion appears to be based primarily upon federal law, the federal courts should presume that no procedural default has occurred when a subsequent unexplained state order does not alter the judgment or its consequences. *See id.* When the last reasoned opinion on a claim expressly imposes a procedural default, the presumption is that a later decision rejecting the claim did not disregard the procedural bar and consider the merits. *Id.* Strong evidence to the contrary can rebut such a presumption. *Id.,* —— U.S. ——, 111 S.Ct. at 2595. If this "look through" presumption applies and is unrebutted by strong evidence, then federal court habeas review of a state-procedurally barred claim is barred unless the petitioner can establish "cause and prejudice" for the default.

The Supreme Court did recognize that a later state decision based upon ineligibility for further state review neither rests upon procedural default not lifts a pre-existing procedural default, and the Court noted that such a decision has no effect upon the availability of federal habeas review. *Id.,* —— U.S. at —— n. 3, 111 S.Ct. at 2595 n. 3. Also, the Court did not state what, if any, presumption should be applied when no state decision addresses a federal habeas petitioner's claim.

In *Ylst,* the Court recognized that the discretionary denial of review of state habeas proceedings on direct appeal by the highest state court of California does not constitute a judgment. *See id.* —— U.S. at ——, 111 S.Ct. at 2596. The same conclusion can be made concerning the Texas Court of Criminal Appeals' denial without written order of the Petitioner's second state habeas petition.

■ When an unexplained order denies a petitioner's request for state habeas relief, the federal courts should "look through" the records of all of the state court decisions concerning the petitioner's incarceration. If any of these decisions expressly addressed the claims made by the petitioner in his federal habeas proceedings, then the federal court should presume that the highest state court in its most recent unexplained order agreed with the reasoning of the previous explained state court decision. However, when no previous state decision expressly decided the merits of a petitioner's claims, a federal court cannot "look through" the unexplained decision of the highest state court to find an adequate and independent state law ground for the ruling. Such a presumption of an adequate and independent state law ground only arises when a state court actually decided the disputed claim on an adequate and independent state law ground.

In a decision rendered on the same day as *Ylst,* the Supreme Court affirmatively held that:

> In habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition.

*See Coleman v. Thompson,* —— U.S. ——, ——, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991) (footnote omitted). The Court did qualify this holding by noting that:

> This rule does not apply if the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims.

*See id.,* at n. 1. In the present case, the Respondent does not contest the Petitioner's assertion that he has exhausted his state remedies. *See Respondent's Motion for Summary Judgment,* filed October 4, 1991, at 3. The record supports and establishes this assertion. In his second state court habeas petition the Petitioner specifi-

cally argued that his confinement resulting from fundamentally defective indictments violates "the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution." Consequently, the above exception to the rule does not apply.

■ "[F]ederal habeas courts must ascertain for themselves if the petitioner is in custody pursuant to a state court judgment that rests on adequate and independent state grounds." *Id.*, —— U.S. at ——, 111 S.Ct. at 2558. The *Harris* decision presumes that a state court decision did not rest on an independent and adequate state ground when the state court decision fairly appears to rest on federal law or is interwoven with federal law and the state court does not plainly state that it is relying on an adequate and independent state ground. *See Coleman*, —— U.S. at ——, 111 S.Ct. at 2558. Such a presumption applies only when it fairly appears that s state court judgment rested primarily on federal law or was interwoven with federal law. *Id.*, —— U.S. at ——, 111 S.Ct. at 2559. In the absence of such a clear indication that a state court rested its decision on federal law, the conclusive presumption of *Harris* is not necessary. *Id.* Substantively distinct from the present situation, in *Coleman* the state's highest court did clearly rely on an independent state procedural rule. *Id.*, —— U.S. at ——, 111 S.Ct. at 2560 (holding that an untimely notice of appeal would bar review). In *Coleman*, the highest state court explicitly granted a dismissal of the state habeas petition on state procedural grounds. *Id.*, —— U.S. at ——, 111 S.Ct. at 2561.

■ In the present situation, the state courts never expressly addressed the Petitioner's federal claims. However, these claims were clearly presented to the state courts. Further, no state court ever mentioned the possibility of a state procedural bar of Petitioner's federal challenges to the sufficiency of the indictment. Also, in the state court proceedings, the state never even argued that a procedural bar applied in the present situation. In fact, the first time the state ever argued that a procedural bar applies in this case was in the Respondent's motion for reconsideration of this Court's earlier judgment in this action.

Providing additional support for the conclusion that no procedural bar is effective in this action is the finding that any such procedural bar would not be "adequate" in this particular case. The Texas court's decision in *Studer v. State*, 799 S.W.2d 263 (Tex.Crim.App.1990), occurred well after the initial conviction of the Petitioner. Because of the delay of five years from the time that the new state procedural rule was enacted and the highest state court's construction of that rule, the state procedural ground was clearly neither strictly nor regularly followed at the time of Petitioner's sentencing. *See Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988). The Supreme Court has reiterated the standard that a state procedural ground is not "adequate" unless the state procedural rule is "strictly or regularly followed." *Id.* (citations omitted). There is no evidence to support a conclusion that this procedural rule was strictly or regularly applied by the state courts prior to the *Studer* decision in 1990. Rather, the cases suggest that this rule was not strictly or regularly applied at the time of and for several years after the Petitioner's conviction. Indeed, raising for the first time the challenge to the indictments, the Petitioner's second state habeas petition was filed on October 31, 1990, before the date the Texas court issued its *Studer* decision.

In light of the very unique facts and circumstances of this case, the Supreme Court decisions, *Ylst, Coleman, Johnson*, and *Harris*, read together weigh against the finding of a state procedural bar in the present situation. No conclusive presumption weighs against or in favor of finding an adequate and independent state law ground. Based upon the entire state court record and all of the state court decisions involving the Petitioner's present incarceration, the state courts cannot be said to have applied a state procedural bar to Petitioner's federal constitutional challenge to the sufficiency of the three indictments.

In federal cases in which a state procedural bar was found applicable, at least one state court had, at some time in the course of the proceedings, expressly found that a state procedural bar prevented the petitioner from asserting the right at issue. *See e.g., Francis v. Henderson,* 425 U.S. 536, 538, 96 S.Ct. 1708, 1709, 48 L.Ed.2d 149 (1976) (stating that the state court had held that the constitutional claim of the petitioner had been waived); *see also Murray v. Carrier,* 477 U.S. 478, 483, 106 S.Ct. 2639, 2643, 91 L.Ed.2d 397 (1986) (recognizing that the state habeas court had dismissed the state habeas petition because of a state procedural bar). In *Francis,* the Supreme Court also recognized that a federal accused is constrained by the same procedural limitations as the pertinent state rule regarding the timeliness of constitutional challenges to the composition of the grand jury. *See Francis,* 425 U.S. at 539–542, 96 S.Ct. at 1710–1711. Unlike constitutional challenges to the composition of a grand jury, a federal defendant may challenge fundamental defects, such as failure to show jurisdiction *or* to charge an offense, in an indictment at any time during the pendency of the proceedings. *See* Fed. R.Crim.P. 12(b)(2).

At his guilty plea and at his sentencing, the petitioner waived the reading of the indictment and the sentencing court did not read the indictment. In his second state habeas petition, Petitioner Williams raised, for the first time, his claim regarding the insufficiency of the indictment. The state district court judge issued an order that merely stated "that there are no controverted, previously unresolved facts material to the legality of applicant's confinement." *See* Finding of the 22nd District Court of Caldwell County, filed December 12, 1990. The state district judge did not in any way address the legal argument of the petitioner concerning the indictments. Pursuant to Texas procedural rules, the second state habeas petition was forwarded to the Texas Court of Criminal Appeals. On January 10, 1991, a single justice of the Texas Court of Criminal Appeals denied without written order the petitioner's second state application.

In a recent decision, the Fifth Circuit addressed a similar situation and found that no state procedural bar had occurred. *See Brown v. Collins,* 937 F.2d 175, 178–179 (5th Cir.1991). Similar to the state court's order on the Petitioner's second state habeas petition, the *Brown* court considered a state court judgment which appeared "to be a standard form judgment which the court routinely uses to deny petitions on the merits." *See id.* at 179 n. 5. In the present action, the state trial court's order in the present action did not even make an express recommendation concerning the disposition of the petition to the state's highest court. In *Brown,* unlike the present action, the State did not suggest that there is any basis for concluding that the state court applied a procedural bar to the petitioner's federal claims. *Id.* The decision of the Fifth Circuit in *Brown* directly supports this Court's finding that the Petitioner's federal claims are not procedurally barred.

■ Based upon the record in this case, this Court concludes that the Texas Court of Criminal Appeals did not consider the merits of petitioner's federal arguments concerning the sufficiency of the indictment, especially where no court, not even the convicting court, ever addressed the merits of the petitioner's federal claim.[5] Entered without written order, the cursory denial of the Petitioner's state habeas proceeding gives no guidance whatsoever as to the reasons for the order. Even if the state's highest court is presumed to have ruled on the merits of Petitioner's challenge to the sufficiency of the indictments, the state's highest court must also be presumed to have addressed the federal constitutional challenges made by the Petitioner.

---

5. The Fifth Circuit has held that when the Texas Court of Criminal Appeals denies relief *and* adopts the trial court's express findings that the information and supporting affidavits were not fundamentally defective that the highest state court has held that the charging instrument was sufficient, thereby precluding federal habeas review. *See Millard v. Lynaugh,* 810 F.2d 1403, 1407 (5th Cir.1987). The Texas court did not so act in this case.

Therefore, this Court will now examine the sufficiency of the three state indictments.

## THE SUFFICIENCY OF THE INDICTMENTS

■■■■ The sufficiency of a state indictment is not a reason for federal habeas corpus relief unless the state indictment was so defective that the convicting state court had no jurisdiction. *Branch v. Estelle,* 631 F.2d 1229, 1233 (5th Cir.1980). There is no federal habeas review of the sufficiency of a state indictment if the sufficiency of that charging instrument was squarely presented to the highest state court on appeal and that court held that the trial court did have jurisdiction. *See Millard v. Lynaugh,* 810 F.2d 1403, 1407 (5th Cir.1987), *cert. denied,* 484 U.S. 838, 108 S.Ct. 122, 98 L.Ed.2d 81 (1987). There is no such state court finding in the present case.

To properly allege the offense of aggravated robbery in an indictment, under Section 29.03 of the Texas Penal Code, the indictment must first allege the elements of robbery as defined by Section 29.02 of the penal code. *See Ex parte Snelson,* 601 S.W.2d 358 (Tex.Crim.App.1980). More specifically:

> [Section] 29.02 provides that a person commits an offense [of robbery] if in the course of committing theft as defined in Chapter 31 of the penal code he *with the intent to obtain or maintain control of the property,* either *intentionally, knowingly, or recklessly causes bodily injury to another,* or *intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.*

*See id.* (emphasis added). The Texas Court of Criminal Appeals has expressly listed the elements of the offense of aggravated robbery:

(1) a person

(2) in the course of committing theft

(3) with the intent to obtain or maintain control of property either

(4a) *intentionally, knowingly, or recklessly*

(5a) causes bodily injury or

(4b) *knowingly or intentionally*

(5b) threatens or places another in fear of imminent bodily injury or death *and* either

(6a) causes serious bodily injury to another or

(6b) uses or exhibits a deadly weapon.

*See Ex parte Santellana,* 606 S.W.2d 331, 332 (Tex.Crim.App.1980) (emphasis added) (citing *Ex parte County,* 577 S.W.2d 260, 261 (Tex.Crim.App.1979)).

In *Ex parte County,* the Texas Court of Criminal Appeals held that an indictment failed to allege the offense of aggravated robbery where the indictment alleged that the petitioner did "intentionally and knowingly use and exhibit a deadly weapon" but failed to alleged that the petitioner "intentionally, knowingly, or recklessly cause[d] bodily injury to another" or "intentionally, or knowingly threaten[ed] or place[d] another in fear of imminent bodily injury or death." *See Ex parte County,* 577 S.W.2d at 261.[6] Because the indictment failed to allege an offense under the laws of the state, the Texas court held that the indictment was void and that the trial court never had jurisdiction to entertain the petitioner's plea. *Id.* Such fundamentally defective indictments may be challenged by a post-conviction application for writ of habeas corpus. *Id.*

In *Snelson,* where the indictment failed to allege that the petitioner had the "intent to obtain and maintain control of the property," the Texas Court of Criminal Appeals granted the writ of habeas corpus. *See Snelson,* at 359–359. Because this allegation, a necessary element of the offense, was not made in the indictment, the Texas court held that the indictment was insufficient to allege the offense. *Id.* at 359. The court set aside the conviction and dismissed the indictment. *Id.*

---

**6.** As well as omitting a required mental element of the offense, the state indictments at issue in this case did not allege that the petitioner "intentionally" or "knowingly" used a deadly weapon.

In *Ex parte Santellana,* the State argued that the language "intentionally or knowingly" language in the statute pertaining to the assaultive component was superfluous. *See Ex parte Santellana,* 606 S.W.2d at 333. The highest state court expressly rejected this argument. *Id.* Because the indictment at issue failed to include the required mental element concerning the threatening element of aggravated robbery, the Texas court held that the indictment was fundamentally defective. *See id.* at 332–34. In that case the pertinent part of the indictment read:

"... did then and there while in the course of committing theft of money owned by [a person], hereafter styled the complainant, and with intent to obtain and maintain control of the property threaten and place the complainant in fear of imminent bodily injury and death, by using and exhibiting a deadly weapon, namely, a pistol...."

*See id.* at 331.

The three indictments at issue in the present action all contain the following pertinent language:

"... did then and there, while in the course of committing theft of property and with intent to obtain and maintain control of said property, threaten and place [a person] in fear of imminent bodily injury and death, and the defendant did then and there use and exhibit a deadly weapon, to-wit: a firearm."

*See* Petitioner's Exhibits B, C, and D attached to Petitioner's Original Petition. This language is at least as defective as the language found to be fundamentally defective by the Texas Court of Criminal Appeals in *Ex parte Santellana.* This language entirely fails to allege the necessary mental element listed above as element "(4a)" or "(4b)."[7] The three indictments did not state the required mental element that the petitioner *"intentionally"* or *"knowingly"* threatened or placed another in fear of imminent bodily injury or death.

Entered by the state convicting court on May 24, 1988, the written "Judgment and Sentence" convicting the petitioner must be analyzed. First, these written sentences for the aggravated robbery offenses are all identical. According to these judgments, the petitioner waived his right to a jury trial and he waived the reading of the three indictments. *See Judgment and Sentence,* at 2 (entered May 24, 1988). Also, the petitioner waived the reading of these indictments when he entered his guilty pleas. *See Statement of Facts: Guilty Pleas,* at 2, transcript of proceedings on April 11, 1988. The state judge did state the possible range of punishment, but the judge did not state the elements of the offense of aggravated robbery. The state judge made certain that the petitioner understood the possible range of punishment for the alleged offenses. *See id.* at 7–8. The petitioner also waived his right to a jury trial. *Id.* at 10. Upon examination by the prosecutor, the petitioner affirmatively stated that he knew that he was waiving his rights to a jury trial, against self-incrimination, and to confront witnesses. *Id.* at 13. The Petitioner did not affirmatively waive any other federal constitutional rights.

The prosecutor then read the three indictments at issue exactly as the indictments were written. The petitioner signed three documents, each entitled "Stipulation of Evidence," that repeated verbatim the essential wording of the three indictments. *Id.* At no time did the petitioner sign or acknowledge guilt to a charge of aggravated robbery that contained all of the essential elements of that offense. At his sentencing, the state judge again did not state the elements of the offense of aggravated robbery. *See Statement of Facts: Sentencing Phase,* transcript of proceedings on May 17, 1988.

---

7. This Court does note that, under Texas law, the indictment need not allege "intentionally *and* knowingly" in the conjunctive but rather may allege "intentionally *or* knowingly" in the disjunctive to be sufficient. *See Wells v. State of Texas,* 762 S.W.2d 673, 674 (Tex.App.—Texar-

kana 1988, writ refused). For an indictment to allege the offense of aggravated robbery, only one of those mental states must be alleged. *Id.* However, at least one of the mental states must be alleged.

■ In the proceedings before the convicting state court, the petitioner was never informed of the fact that he might be waiving his constitutional rights beyond those of which he was specifically informed. He was not told or informed of the new state law that a failure to contest the indictment could waive *any* defects therein for state review purposes. Not informed of his Sixth Amendment right to a proper indictment, the Petitioner did not waive that right. When the Petitioner presented his constitutional challenge to the indictments, no state court concluded that he had waived this right.

FEDERAL CONSTITUTIONAL GUARANTEES

■ The Sixth Amendment of the Constitution of the United States requires that an indictment inform the defendant of the nature of the charges against him. *See United States v. Arlen,* 947 F.2d 139, 144 (5th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1480, 117 L.Ed.2d 623 (1992); *see also United States v. Chaney,* 964 F.2d 437, 446 (5th Cir.1992).

■ The decisional law interpreting federal indictments is clear. Because a defect in an indictment is jurisdictional, a person does not waive such a defect by pleading guilty to the defective indictment. *See United States v. Rivera,* 879 F.2d 1247, 1251 (5th Cir.1989) (citation omitted), *cert. denied,* 493 U.S. 998, 110 S.Ct. 554, 107 L.Ed.2d 550 (1989); *see also United States v. Lopez,* 704 F.2d 1382, 1385 n. 3 (5th Cir.1983), *cert. denied,* 464 U.S. 935, 104 S.Ct. 341, 78 L.Ed.2d 309 (1983). A criminal indictment must plainly and concisely state the *essential facts* constituting the charged offense. *Id.* (emphasis in original) (citation omitted). If it fails to allege a material element of an offense, the indictment fails to charge that offense. *Id.* The three indictments at issue are clearly defective under the Sixth Amendment of the Constitution of the United States. Specifically, the Sixth Amendment mandates that "... the accused shall enjoy the right ... to be informed of the nature and cause of the accusation; . . . ." Since all of the rights guaranteed under the Sixth Amendment are fundamental to our system of criminal justice, these rights are guaranteed to criminal defendants in state courts under the due process clause of the Fourteenth Amendment. *See Faretta v. California,* 422 U.S. 806, 818, 95 S.Ct. 2525, 2532, 45 L.Ed.2d 562 (1975). Thus, the Sixth Amendment is applicable to the states with full force. The accused must personally be "informed of the nature and the cause of the accusation." *See id.,* 422 U.S. at 819, 95 S.Ct. at 2533.

An indictment is sufficient if:
(1) the indictment contains the elements of the offense charged;
(2) the indictment "fairly informs" the defendant of the charge against him;
(3) and the indictment enables the defendant to plead acquittal or conviction to bar future prosecutions for the same offense.

*Arlen,* 947 F.2d at 144; *Chaney,* 964 F.2d at 446; *see also Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). The standard for determining the sufficiency of an indictment is based upon practical, not technical, considerations. *Chaney,* 964 F.2d at 446. The test is whether the indictment conforms to minimal constitutional standards, not whether the indictment could have been more satisfactorily written. *Id.* When a defendant challenges the sufficiency of an indictment for the first time on appeal, the court should liberally analyze the indictment as sufficient, unless the indictment "is so defective that it does not, by any reasonable construction, charge an offense for which the defendant was convicted." *Id.* at 447 (citation omitted). In the present situation, the pertinent state law decisions that involved state habeas challenges, as well as federal constitutional guarantees, mandate a finding that the three indictments do not charge the offense of aggravated robbery under any reasonable construction.

■ In the present case, the third factor is not at issue. The second factor is doubtful. However, the first factor is lacking because the three indictments for ag-

gravated robbery did not contain a necessary mental element of the offense. The three indictments also did not refer to the statutory authority. Such statutory citation would have served as reinforcement for the alleged offense. *See Chaney,* 964 F.2d at 448 (citations omitted). Such a citation would have increased the clarity of the indictments. *See United States v. Boyd,* 885 F.2d 246, 249 (5th Cir.1989).

■ An indictment that restates the wording of a statute is generally sufficient if those words "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." *See Arlen,* 947 F.2d at 145 (citation omitted). Therefore, if repeated in the indictment, the statutory language may guarantee the sufficiency of the indictment if all required elements are included in the statutory language. *Id.* In the three indictments at issue, most of the statutory language was used but the relevant language that would have informed the petitioner of the required mental element was missing.

■ If it was not challenged for sufficiency at the trial level, an indictment should be liberally read to be sufficient unless no reasonable construction of the indictment would charge the offense for which the defendant has been convicted. *See United States v. Salinas,* 956 F.2d 80, 82 (5th Cir.1992) (citations omitted) (construing a federal indictment). However, the Fifth Circuit holds that an "indictment must allege each and every element of the offense to pass *constitutional* muster...." *See United States v. Webb,* 747 F.2d 278, 284 (5th Cir.1984) (citation omitted), *cert. denied,* 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985). The Fifth and Sixth Amendments of the Constitution mandate that an indictment set forth each essential element of an offense. *See United States v. Wilson,* 884 F.2d 174, 179 (5th Cir.1989) (citations omitted). When an indictment is challenged for the first time after conviction, an indictment is presumed to be sufficient "unless it is so defective that it does not, by any reasonable con-

struction, charge an offense for which the defendant is convicted." *Id.* (quoting from *United States v. Trollinger,* 415 F.2d 527, 528 (5th Cir.1969)). In *Wilson,* the Fifth Circuit concluded that the indictment at issue, liberally read, fairly, though not expressly, imported the "marginal mental state" of knowledge of the facts constituting the offense where the indictment repeated the language of the statute and expressly referred to the specific statutory provision alleged to have been violated, and where the statute itself had no express mental state. *See Wilson,* 884 F.2d at 179–181. The mental state that is missing in the three indictments at issue is a high mental state, much more than a "marginal" one. In the present situation, the state statute of aggravated robbery expressly contains the mental element alleged to have been omitted from the three indictments at issue.

The three indictments fail to allege an essential, fundamental element of the offense of aggravated robbery. In a federal habeas proceeding, the Fifth Circuit has summarized the applicable standards concerning defects in indictments:

> If there was a formal defect in the indictment, the question was not raised before or during the trial. If constitutional requirements are not met then a verdict of guilty does not cure the defect..... Nor will a verdict cure a defective indictment which fails, by any construction, to state an offense..... [T]he appellant is also precluded from relief because habeas corpus can not be invoked for relief against defective indictments unless it clearly appears that, under no circumstances, could a valid conviction result from facts provable under the indictment.

*See Morales v. Wilkinson,* 283 F.2d 252, 252–253 (5th Cir.1960) (citations omitted).

## CAUSE AND PREJUDICE ASSUMING WAIVER OF DEFECTS IN THE INDICTMENT

■ In 1990, the Texas Court of Criminal Appeals held that the failure of a defendant to object before trial to a defect of substance in a charging instrument effec-

tively waived any such error on appeal. *See Studer v. State,* 799 S.W.2d 263, 273 (Tex.Crim.App.1990). In *Studer,* the highest state court recognized and gave effect to the 1985 amendment to the state constitution which provided in pertinent part:

> The practice and procedures relating to the use of indictments and informations, including their contents, amendments, sufficiency, and requisites, are as provided by law.

*Studer,* 799 S.W.2d at 272 (quoting Tex. Const. Art. V, § 12(b)). In a law passed that became effective in 1985 upon the passage of the above state constitutional amendment, the State of Texas adopted a statute that provides:

> (b) If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding....."

*See Studer,* 799 S.W.2d at 265–266 (citing Tex.Code Crim.Proc. art. 1.14(b)).[8]

The Texas court stated its belief that "the requisites of an indictment stem from statutory law alone now." *Id.* The Texas court concluded that the failure on an indictment to allege the specific acts to constitute a general element of an offense was a substantive defect under prior decisional law, but the court held that the defendant had waived this error in substance because of his failure to make any pre-trial objection. *Id.* at 273.

In *Studer,* following a plea of nolo contendere, the defendant was found guilty in a bench trial. *Id.* at 264. The defect in the indictment resulted from non-compliance with a state statute that required the specific acts constituting recklessness to be

alleged in the indictment with "reasonable certainty." *See id.* at 265.

In a similar case, the Texas Court of Criminal Appeals held that, by failing to object to a substantive defect in an information before trial, a defendant waived the defect. *See Rodriguez v. State,* 799 S.W.2d 301, 302 (Tex.Crim.App.1990). Although it omitted a necessary element, the information was not fundamentally defective under state law. *Id.* at 303.

Presumably, the defective indictments in *Studer* and *Rodriguez* were compensated for by the fact that a bench trial was held in *Studer* and a jury trial in *Rodriguez* that effectively cured by submission of evidence the defects in the charging instruments at issue. Indeed, a person cannot be convicted of a crime unless the evidence supports each of the elements of the crime. In the present case, there was no trial on the merits. Although the defendant waived his right to such a trial, no evidence was admitted to prove the essential elements of the offense. Instead, the defendant signed a stipulation that admitted to the elements listed in the indictment but did not address the missing mental element. The evidence before the state trial court failed to support the petitioner's conviction for aggravated robbery.

Although no party has addressed this issue, the procedural bar rule at issue arguably does and should not even apply to cases in which the defendant has plead guilty *before* any trial on the merits, where no trial on the merits has ever occurred. The rule itself states that any objection must be made before trial on the merits. The state rule does not directly address situations in which a plea of guilty is entered.

Most significantly unlike the present situation, the state courts in *Studer* and *Rodriguez* specifically found that the defendant was procedurally barred, under state

---

**8.** As a result of this change in Texas law, the Fifth Circuit has noted that "[s]ufficiency of Texas indictments as a basis for federal habeas relief will soon become rare...." *See Garrett v. McCotter,* 807 F.2d at 486 n. 6. Indeed, if no objection is made to any defect in the charging instrument before "the date on which the trial

on the merits commences," the defendant waives any right to relief thereon and will be foreclosed from raising the defect on appeal or in post-conviction habeas proceedings." *Id.* This state procedural waiver would not apply if not invoked by the state courts.

law, from challenging the sufficiency of the indictments. In the present situation, no state court ever ruled that the Petitioner was procedurally barred under state law from asserting his federal challenges against the three indictments.

The State of Texas now, and at the time of the petitioner's pleas of guilty, has a statutory procedural rule that requires that a defendant object before trial on the merits to any defects in the indictment, or the defendant will be found to have waived such defects. The Texas Court of Criminal Appeals had not expressly ruled on the state constitutional limitations of this rule at the time of the Petitioner's pleas. Unlike the procedural rule at issue in *Francis v. Henderson,* the current Texas rule was not clearly established at the time the Petitioner entered his pleas of guilty. *See Francis,* 425 U.S. at 537, 96 S.Ct. at 1709. Therefore, at the time of the Petitioner's pleas, this statutory rule had not yet been tested or conclusively established as a matter of state law.[9]

Explaining cases in which a state procedural bar was properly at issue, the United States Supreme Court has stated:

> If a criminal defendant thinks that an action of the state trial court is about to deprive him of a federal constitutional right there is every reason for his following state procedure in making known his objection.

*See Wainwright v. Sykes,* 433 U.S. 72, 90–91, 97 S.Ct. 2497, 2508–2509, 53 L.Ed.2d 594 (1977). The Supreme Court requires that federal habeas petitioners must demonstrate "cause" and "prejudice" for failing to object in accordance with the state rule. *Id.,* 433 S.Ct. at 87, 97 S.Ct. at 2506; *see also Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982). The same "cause" and "prejudice" test applies to federal prisoners who are faced with a procedural default, and the standards are the same. *See United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982). The amount of prejudice should be "evaluated in the total context of the events at trial." *Id.,* 456 U.S. at 170, 102 S.Ct. at 1595.

Because the petitioner failed to object to the defects before his entry of a guilty plea, the state law apparently would procedurally bar any such future objection. However, because nothing in the record supports a finding that a state court ever imposed or used this procedural bar upon the Petitioner, his federal challenge is properly before this Court for consideration.

Never has the State argued that the three indictments at issue are proper. The State has not challenged the petitioner's claim that the indictments are fundamentally defective. Instead, the state argues that the state's highest court can be presumed to have ruled on these claims based upon adequate and independent state law grounds. As discussed above, the entire record provides no support for such a presumption.

CONCLUSION

This court's ruling is limited to the specific facts and circumstances of this case. The petitioner never was made aware of his constitutional rights regarding the sufficiency of an indictment. Also, the petitioner never impliedly waived any such rights. The petitioner was never expressly informed of all of the essential elements that have to be proved to convict someone of the offense of aggravated robbery. The petitioner never acknowledged that he was aware of these elements. The indictments did not reference the statutory authority for the alleged offense. The three indictments all omitted a fundamental element of the offense of aggravated robbery. Although he did expressly waive the reading of the indictments, the petitioner did not ever waive his federal constitutional rights regarding the sufficiency of the indictment. Further, because he entered a plea of guilty, the state record fails to show that any evidence was ever admitted to a state court to support a finding that the omitted mental element was nevertheless supported by the evidence. There is no state proce-

---

9. This Court does not address the possible federal constitutional restraints on this new proce-

dural rule of the State of Texas, which has not yet been challenged in the federal courts.

dural bar applicable to the Petitioner's claims.

Therefore, the three indictments at issue were and are fundamentally defective under federal constitutional guarantees. There can be no question concerning the lack of sufficiency of these three indictments. They each fail to allege an essential element of the offense of aggravated robbery. This Court need not address the additional claims made by the petitioner.[10]

IT IS ORDERED, ADJUDGED, AND DECREED that Petitioner's Williams application for writ of habeas corpus is hereby GRANTED with respect to the three state indictments that attempted to indict the petitioner for the offense of aggravated robbery. These three indictments are DISMISSED as fundamentally defective and the sentences imposed under these three indictments are VACATED.

---

**10.** This Court does note that it has serious reservations regarding the petitioner's challenge that he did not have effective assistance of counsel, especially in light of his counsel's entire failure to recognize and challenge the defective indictment, and other allegations of ineffectiveness raised by the Petitioner.